STATE OF WEST VIRGINIA

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **I.H., O.H., and R.H.**

**No. 20-0701** (Berkeley County 19-JA-58, 19-JA-59, and 19-JA-60)

**MEMORANDUM DECISION**

Petitioner Mother Y.G., by counsel Nancy A. Dalby, appeals the Circuit Court of Berkeley County's July 27, 2020, order terminating her parental rights to I.H., O.H., and R.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Mary Binns-Davis ("guardian"), filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent and in terminating her parental rights.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner raises a third assignment of error regarding the circuit court's decision to not consider its in camera interview with R.H. in ruling in this case and to withhold the transcript of that interview from petitioner. Petitioner argues that "it is important to know what was in R.H.'s forensic interview and what was said . . . by R.H. which may contain exculpatory information." However, petitioner provides no basis for this conclusion. The circuit court stated at the dispositional hearing and in its subsequent order that it did not take the interview into account in reaching disposition. Additionally, in her brief on appeal, petitioner fails to cite to any legal authority in support of this assignment of error. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the *points of* fact and *law presented . . . and citing the authorities relied on*, under headings that correspond with the assignments of error." (Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority

(continued . . .)

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition against petitioner, the children's father, and the children's stepfather, J.H. The DHHR alleged that petitioner and the children appeared at a local hospital with law enforcement because J.H. was at the home drunk and possessed a firearm. The DHHR alleged that petitioner told law enforcement officers that she wanted someone to take temporary custody of I.H., her fourteen-year-old daughter, so she could return home to J.H. with her sons, R.H. and O.H. The DHHR alleged that I.H. disclosed to hospital workers that J.H. was "trying to have sex with her and she [did not] want to." The DHHR alleged that petitioner either did not believe the child's accusations or "d[id] believe but [did not] care." The DHHR further alleged that petitioner blamed I.H., did not want the child in her custody, and was not protective of the child. According to the petition, a Child Protective Services ("CPS") worker spoke with a registered nurse at the hospital, who corroborated the child's statements. The CPS worker also spoke with a forensic interviewer who confirmed that petitioner cancelled I.H.'s scheduled forensic interview. Later that month, the CPS worker spoke with I.H., who disclosed that J.H. "came into her room and touched her privates" on top of her clothing. The child also disclosed that J.H. showed her a video of petitioner and him engaging in sexual intercourse. I.H. further disclosed that J.H. asked her if she "wanted to sleep with one of the other orchard workers." I.H. also disclosed that on one occasion J.H. told her to "kill her brothers" because they were being loud and fighting with each other; the child also disclosed that she told petitioner about this incident. Finally, I.H. reported that she had not spoken to either parent since she returned from the hospital and that she was "scared to leave her room."

According to the petition, the CPS worker also spoke to R.H., who claimed that I.H. was lying and fabricating accusations against J.H. The child further disclosed that J.H. was "going to kill [I.H.] because of how she is acting," and did not want I.H. in the home. The CPS worker then spoke with petitioner, who stated that she did not believe I.H. because "everyone is saying that nothing is going on." Petitioner further claimed that she believed the child "at first" but then stated that I.H. dressed inappropriately, "with her breasts showing, sit[ting] with her legs open, and ben[t] over so [J.H.] could see her breasts.", The DHHR also alleged that the CPS worker spoke with J.H., who denied all of I.H.'s allegations. After the petition was filed, petitioner waived her preliminary hearing and the circuit court ratified the removal of the children from her custody.

---

to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief regarding this assignment of error is inadequate as it fails to comply with West Virginia Rule of Appellate Procedure 10(c)(7) and our December 10, 2012, administrative order. Accordingly, the Court will not address this assignment of error on appeal.

In May of 2019, the CPS worker observed a forensic interview with I.H. The child recounted details of J.H. and petitioner drinking alcohol together before J.H. came into her room and touched her inappropriately. The CPS worker noted that I.H. said petitioner was asleep when the abuse occurred and that J.H. asked her if she was a virgin, told her he wanted to murder the child's paternal grandmother, and that he had killed people before. The child stated that she was afraid of J.H. and would lock herself in her bedroom when petitioner and J.H. consumed alcohol.

The circuit court held an adjudicatory hearing in October of 2019. At the hearing, petitioner testified that, during a family argument in April of 2019, I.H. told her that petitioner touched her genitals. Petitioner said the family argument began with a debate about whether J.H. told the child to kill her brothers. Petitioner testified that she initially believed I.H. and began to hit J.H. before R.H. called the police, and that she ultimately took I.H. to a local hospital. However, petitioner testified that she no longer believed I.H.'s allegations against J.H., saying that the child would refer to J.H. as "papa" and "daddy" and would hug him. Petitioner also testified that I.H. would show J.H. her breasts. Specifically, petitioner testified that I.H. showed her breasts to J.H. when they were playing marbles on one occasion. Petitioner testified that, when she left the game to check on some food, I.H. allegedly lowered her blouse in front of J.H. Petitioner admitted that she did not witness the alleged incident but that J.H. informed her of it. On cross-examination, petitioner acknowledged that she never witnessed I.H. expose her breasts to anyone. Petitioner also testified that she told J.H. to "be careful with [I.H.], she [is] going to get you in trouble." Petitioner further testified that she did not believe I.H.'s allegations because the child inquired what would happen to the parents if sexual abuse occurred.

Next, a CPS caseworker testified to many of the allegations in the petition. The caseworker testified that she began her investigation after receiving a referral of alleged sexual abuse when I.H. was at the hospital. According to the CPS worker, petitioner informed her that I.H. would spend the night in a hotel room after leaving the hospital, but that petitioner did not inform her that I.H. would be left alone in the hotel room. The CPS worker then testified that she had arranged for I.H. to participate in a forensic interview in Winchester, Virginia, where they had a facilitator who could speak Spanish, I.H.'s first language. The CPS worker testified that petitioner cancelled the interview on the scheduled date, claiming that I.H. did not want to participate. The CPS worker further testified that during a subsequent interview with I.H., the child did not know about the scheduled forensic interview and said that, if she had known about it, she would have wanted to participate. After the forensic interview was cancelled, the CPS worker testified that she interviewed the child at her school, using a Spanish teacher as an interpreter, and with law enforcement present. The CPS worker testified that I.H. told her that J.H. came into her room and touched her genitals over her clothing. The CPS worker further testified that the child said J.H. showed her a video of him and petitioner engaging in sexual intercourse and asked her if she wanted to have sex with another orchard worker. Finally, the CPS worker testified that she witnessed I.H. make similar allegations in a subsequently scheduled forensic interview that she witnessed.

After hearing the evidence, the circuit court found that I.H.'s disclosures were "remarkably consistent and credible." The circuit court further found that J.H.'s denial of the sexual abuse allegations was not credible and there was no credible motive on the part of I.H. to fabricate her disclosures. The circuit court also found that petitioner's inability to demonstrate appropriate

3

protective measures toward I.H. was troubling given the credible allegations. Specifically, the circuit court found petitioner's decision to leave I.H. alone in a hotel room overnight after their hospital visit demonstrated neglect and a failure to properly supervise the child. The circuit court also found it concerning that petitioner warned J.H. "to be careful" around the child but did not address any of her perceived concerns about I.H.'s behaviors. Finally, the circuit court found that petitioner's testimony was not credible and that she neglected the children by failing to protect I.H. from J.H. Accordingly, the circuit court found that J.H. sexually abused I.H., that petitioner failed to protect I.H., and that petitioner's alcohol abuse impacted her ability to care for the children. As such, the circuit court adjudicated petitioner as an abusing and neglecting parent. The circuit court also found that the DHHR was not required to make reasonable efforts to preserve the family unit based upon its finding that J.H. had sexually abused I.H., which constituted aggravated circumstances pursuant to West Virginia Code § 49-4-602(d)(2)(E).

In June of 2020, the circuit court held a dispositional hearing wherein the DHHR and the guardian moved to terminate petitioner's parental rights. The DHHR also moved to terminate the biological father's parental rights based on his lack of participation in the proceedings. The DHHR argued that the father was living outside of the country and had no communication with the children or the DHHR throughout the proceedings. Next, the DHHR put on evidence as to petitioner's failure to protect the children and the resulting mental and emotional harm. Specifically, a CPS caseworker testified that there were no services that the DHHR could provide to petitioner to remedy the conditions of abuse and neglect. The caseworker testified that petitioner lacked a "maternal instinct to protect [her] offspring" and was not aware of any services that could teach that to petitioner. The caseworker further testified that she had spoken with the children, and they made it clear to her they did not want to live with petitioner. Petitioner did not testify at the hearing, but petitioner's counsel acknowledged that petitioner still had "difficulty accepting what has occurred in this case." After considering the evidence, the circuit court terminated petitioner's parental rights to I.H., O.H., and R.H. In support, the circuit court found that petitioner failed to acknowledge the conditions of abuse and neglect of the children. Based on this evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. Petitioner now appeals the July 27, 2020, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[3]The children's father's parental rights were also terminated below. J.H.'s custodial rights to the children were also terminated. The permanency plan for O.H. and R.H. is adoption by their foster family. I.H.'s permanency plan is adoption after she is discharged from a specialized facility.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding by clear and convincing evidence that she abused and neglected the children. Petitioner argues that the circuit court made several erroneous findings about her knowledge of J.H.'s sexual abuse of I.H. Furthermore, petitioner contends that it was reasonable for her not to believe I.H.'s claims because of I.H.'s behavior. Finally, petitioner claims that the circuit court failed to consider that petitioner protected the children from their biological father and erred in finding that she abused alcohol. We disagree and find that petitioner is entitled to no relief.

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as

[a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, *or knowingly allows another person to inflict*, physical injury or mental or emotional injury, upon the child or another child in the home.

(Emphasis added).

Here, the circuit court found that petitioner was aware that I.H. had been sexually abused by J.H. based upon I.H.'s "remarkably consistent and credible" disclosures. On appeal, petitioner's arguments in support of this assignment of error are all predicated on her assertions that the circuit court erroneously weighed the evidence in question. However, the rulings to which petitioner cites all come down to the issue of credibility, and as this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

First, petitioner attacks I.H.'s credibility and points to I.H.'s behavior and J.H.'s testimony that I.H. had made similar abuse allegations toward J.H.'s father and uncle. However, the record shows that the circuit court reviewed this testimony as well as I.H.'s interviews and found the child's allegations to be credible. Furthermore, the CPS worker testified that I.H.'s interviews had no "red flags" and were consistent. The CPS worker also expressed concerns that petitioner cancelled the forensic interview, scheduled with a Spanish interpreter, and blamed the child. The CPS worker went on to testify that I.H.'s responses during her interview at the school were consistent with the allegations in the petition. Petitioner also attacks the circuit court's finding that she abused alcohol, acknowledging that she might "drink seven or eight beers on a Saturday," but denying that she passed out on the night that I.H. was sexually abused. Again, while petitioner argues that there was "no other testimony," beyond I.H.'s testimony, that she abused drugs or alcohol, she ignores the fact that the circuit court resolved this credibility determination against her. As for petitioner's testimony that she did not believe any sexual abuse occurred in the home, the circuit court found her testimony incredible given that, at times, petitioner indicated that she did believe I.H. As outlined above, petitioner admitted that the child disclosed the abuse to her in April of 2019, but testified she no longer believed I.H. after considering I.H.'s behavior. Petitioner also testified that I.H. exposed her breasts to J.H. yet acknowledged that she never witnessed I.H. expose her breasts to anyone. Petitioner also acknowledged that she warned J.H. to "be careful with [I.H.], she [is] going to get you in trouble." Therefore, even if we accept petitioner's claim that she did not believe I.H.'s sexual abuse allegations, petitioner effectively admitted that she was concerned about I.H.'s behaviors but failed to address those perceived concerns with her. Petitioner also cancelled the Virginia-based forensic interview scheduled for I.H., and then claimed the child no longer wanted to participate as the reason for the cancellation. However, I.H. told the CPS worker that she never knew about that interview and would have wanted to participate if she had known about it. Finally, petitioner completely disregarded I.H.'s disclosures during her interviews with the CPS worker and a forensic worker that gave detailed accounts of her sexual abuse. Those revelations were identical to those I.H. disclosed to petitioner. In light of the above evidence, the circuit court properly found that I.H. was sexually abused in the home and that petitioner was aware of said abuse and ignored it. Accordingly, we find no error in the circuit court's adjudication of petitioner.

Finally, petitioner argues that the circuit court erred in terminating her parental rights for her failure to acknowledge the basic allegations of the children's abuse and neglect. According to petitioner, when she expressed her doubts about the allegations of abuse and neglect, her parental rights were terminated, and she was denied an improvement period because sexual abuse relieves the DHHR from making reasonable efforts to preserve the family. She further contends that her parental rights should not have been terminated because "there is no analysis of why termination of [her] parental rights" was in the best interest of the children. We disagree.

This Court has previously held that:

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator

6

of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Throughout the proceedings, petitioner continued to deny that J.H. sexually abused I.H. Even after I.H. informed petitioner of J.H.'s sexual abuse over the course of the proceedings, petitioner continued to disbelieve I.H. and instead believed J.H. Indeed, after the circuit court adjudicated petitioner as an abusing parent, petitioner, at the dispositional hearing, continued to deny that I.H. was sexually abused. In fact, petitioner's counsel informed the circuit court that petitioner had "difficulty accepting what has occurred in this case" and had difficulty believing that J.H. could have perpetrated such abuse. Most importantly, petitioner refused to take any steps to protect I.H. even when faced with the testimony stemming from I.H.'s disclosures. As such, petitioner wholly failed to recognize any of the conditions of abuse and neglect at issue in these proceedings.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) sets forth that "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" means that the abusing parent "ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, petitioner's failure to acknowledge the conditions of abuse and neglect serves as a significant barrier to parental improvement. Accordingly, the circuit court correctly determined that there was no reasonable likelihood that petitioner could correct those conditions in the near future.

Finally, we have held as follows:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's finding is fully supported by the record on appeal, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, because permanency has not yet been achieved for one of the children, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

[a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress

and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 27, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton